UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONNIE YOUNG** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-0888** |
| **ALVIN JONES, ET AL.** | **SECTION "S"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

**I.      Factual and Procedural Background**

The petitioner, Ronnie Young ("Young"), is a convicted inmate presently incarcerated in the Riverbend Detention Center in Lake Providence, Louisiana.[2] On September 20, 2004, Young was charged by bill of information in Tangipahoa Parish with the attempted second degree murder of

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 12.

Georgia Butler and simple arson.³ The charges were based on Young's arrest after he threw gasoline on Georgia Butler, with whom he shared a residence, and then lit her on fire.⁴ He also lit the residence and a car on fire before fleeing the seen. This was not the first time Young attempted to set the victim on fire.⁵ As a result of this incident, the victim spent six weeks in the hospital and suffered permanent scarring and loss of use of her right arm.⁶

On March 7, 2005, Young entered pleas of no contest⁷ to both counts in return for a sentence of 15 years without parole, probation, or suspension of sentence for the attempted second degree murder count and a concurrent sentence of 15 years of hard labor for the simple arson count.⁸ The Trial Court accepted the pleas and sentenced Young accordingly. Young did not appeal or seek reconsideration of his sentence. His convictions therefore became final 30 days later, on April 6, 2005. *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); *see Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty

---

³St. Rec. Vol. 1 of 2, Bill of Information, 9/20/04.

⁴St. Rec. Vol. 1 of 2, Initial Follow-up Report, 5/29/04.

⁵St. Rec. Vol. 1 of 2, Plea Transcript, p. 3, 3/7/05.

⁶*Id.*, pp. 3, 5-6.

⁷*Id.*, p. 10. Under Louisiana law, a plea of no contest is equivalent to an admission of guilt and is treated as a guilty plea. *See State v. Gordon*, 896 So.2d 1053, 1061 (La. App. 1st Cir. 2004), *writ denied*, 897 So.2d 600 (La. 2005).

⁸St. Rec. Vol. 1 of 2, Plea Transcript, 3/7/05; St. Rec. Vol. 2 of 2, Plea Minutes, 3/7/05.

pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914[9]).

In the meantime, on March 16, 2005, Young submitted to the Trial Court an application for a writ of habeas corpus raising three claims:[10] (1) ineffective assistance of counsel; (2) he was detained for four months without an arraignment; and (3) he was not properly *Boykin*-ized and was not asked to admit to the charges before his plea was accepted. The Trial Court denied relief in open court on March 24, 2005.[11]

Young later moved the Trial Court to amend his sentence and to consider mitigating factors not presented at the hearing.[12] The Court denied the motion without stated reasons on August 15, 2005.[13]

Young applied again for post-conviction relief based on double jeopardy in an application filed March 13, 2006, with the Trial Court.[14] The Trial Court denied relief as a matter of law on March 15, 2006.[15] His writ application to the Louisiana First Circuit Court of Appeal was denied

---

[9]At the time of the conviction, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 rendered the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985). Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide 30 days to file the notice of appeal. This amendment applies to the petitioner's case.

[10]St. Rec. Vol. 2 of 2, Application for Writ of Habeas Corpus, 3/21/05 (signed 3/16/05).

[11]St. Rec. Vol. 1 of 2, Minute Entry, 3/24/05; St. Rec. Vol. 2 of 2, Trial Court Order, 3/24/05.

[12]St. Rec. Vol. 2 of 2, Motion for Amendment of Sentence, 8/9/05 (dated 8/8/05).

[13]St. Rec. Vol. 2 of 2, Trial Court Order, 8/15/05.

[14]St. Rec. Vol. 2 of 2, Uniform Application for Post-Conviction Relief, 3/13/06 (February, 2006 without a day specified).

[15]St. Rec. Vol. 2 of 2, Trial Court Order, 3/15/06.

on the showing made because he failed to attach the necessary documentation for the Court to review his claims.[16]

Young's next application for post-conviction relief was filed with the Trial Court on November 2, 2006, and alleged that his counsel was ineffective because he was coerced into entering the no contest pleas and because the sentence was entered without mitigation.[17] The Trial Court denied relief on November 8, 2006, because the record showed that the plea was in Young's best interest.[18] Young's related writ application to the Louisiana First Circuit was denied on the finding that the plea was knowingly and voluntarily entered, citing *State v. Jackson*, 916 So.2d 1015 (La. 2005).[19] The Louisiana Supreme Court also denied Young's writ application on November 9, 2007, without stated reasons.[20]

## II.    **Federal Petition**[21]

On December 10, 2007, the clerk of United States District Court for the Middle District of Louisiana filed Young's writ application in which he raised two grounds for relief:[22] (1) ineffective assistance of counsel because he was coerced into entering the pleas of no contest; and (2) ineffective assistance of counsel because he allowed the Trial Court to impose a sentence without

---

[16]St. Rec. Vol. 1 of 2, 1st Cir. Order, 2006-KW-0534, 6/26/06.

[17]St. Rec. Vol. 2 of 2, Uniform Application for Post-Conviction Relief, 11/2/06 (signature not dated).

[18]St. Rec. Vol. 2 of 2, Trial Court Order, 11/8/06.

[19]St. Rec. Vol. 1 of 2, 1st Cir. Order, 2006-KW-2369, 1/24/07.

[20]St. Rec. Vol. 1 of 2, La. S. Ct. Order, 2007-KH-0316, 11/9/07; La. S. Ct. Letter, 2007-KH-316, 2/14/07 (showing postmark 1/30/07).

[21]The Court notes that Young filed another habeas petition in this Court on April 17, 2008, in Civ. Action No. 08-1424"S"(4) raising a double jeopardy claim. The cases have not been consolidated. The second petition will be separately addressed under that case number.

[22]Rec. Doc. No. 1 and attachments.

considering mitigating factors. The State filed a response and memorandum in opposition to Young's petition arguing that his claims were without merit.[23]

### III.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] applies to this petition, which is deemed filed in this court under the federal mailbox rule on December 5, 2007.[25] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State has not raised any procedural defenses and the Court can find none from the record provided. The Court will proceed to the merits of the claims raised.

---

[23]Rec. Doc. Nos. 10, 11.

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of the Middle District filed Young's federal habeas petition on December 10, 2007, when the case was received. Young dated his signature on the petition on December 5, 2007. This is presumed to be the earliest date on which he could have delivered it to prison officials for mailing.

**IV.    Standards of Review of the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2)

extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

### V.     Ineffective Assistance of Counsel

Young alleges that his counsel was ineffective because he was coerced into entering the pleas of no contest. He also claims that counsel was ineffective for allowing the Trial Court to sentence him without considering the mitigating factors and for participating in the plea negotiations. Young

raised these claims on post-conviction review. In the last reasoned decision,[26] the Louisiana First Circuit determined that the plea was knowingly and voluntarily entered.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). When a defendant pleads guilty and then seeks habeas review based upon allegations of ineffective assistance of counsel, the proper standard to be applied is the standard established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Thus, the question before this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, the United States Supreme Court decision in *Strickland*.

In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*., at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Under *Hill*, which applies *Strickland* in the guilty plea context, the first prong is satisfied by a showing that "counsel's representation fell below an objective standard of reasonableness." *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 687-88). "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

---

[26]*See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). "In order to satisfy . . . [*Strickland*'s] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Furthermore, however, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994).

In deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

### A.    Coerced Plea (Claim No. 1)

Young alleges that he was coerced into the pleas of no contest because the Trial Court scared him with its statements that he would get 50 years in prison instead of 15 years if a jury found him guilty after trial. Under a broad reading, he also apparently suggests that the Trial Court should not have been involved in the plea negotiations because of the coercive effects. Young, however, fails to indicate how counsel's performance during the plea in anyway fell below constitutional standards.

A review of the plea transcript reflects that, the Court spoke directly to Young about the plea bargain posed by the State.[27] The Court advised Young that he was looking at 50 years in prison on the attempted second degree murder plus ten years on the simple arson. The Court instructed counsel to speak with Young about his options. The Court discussed the extent of the victim's injuries with Young and Young indicated his intent to go to trial.[28] After speaking further with the Court about the victim impact evidence and his time exposure, Young decided he would accept the 15-year sentence offered by the State.

The Court proceeded to question him about his age and education. The Court explained the elements of both crimes. When Young indicated that he did not understand the arson charge, the Court re-explained it to him and Young then stated that he understood the charge. He also indicated his understanding of the attempted second degree murder charge and the sentence agreed upon for that charge.[29] The Court continued on to question Young about the rights he was waiving by accepting the plea offer. After the lengthy colloquy between the Court and Young, Young also indicated that he was satisfied with the advice he received from his counsel.[30] The Court thereafter found that the deal between Young and the State was voluntary and without threats, forces, promises, or inducements.

A guilty plea that represents a voluntary and intelligent choice among the alternatives available to a defendant to avoid a possible longer sentence is not coerced. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Similarly, under

---

[27]St. Rec. Vol. 1 of 2, Plea Transcript, pp. 4-7, 3/7/05.

[28]*Id.*, p. 6.

[29]*Id.*, pp. 9-10.

[30]*Id.*, p. 11.

Louisiana law, when a trial judge explains the possible penalties a defendant faces after trial and conviction by jury compared to that offered in a plea agreement, there is no inherent coerciveness. *State v. Bouie*, 817 So.2d 48, 55 (La. 2002). The Louisiana Supreme Court has explained that the advice given by the trial judge in that instance concerns information that an accused should possess to enter a knowing and intelligent guilty plea. *Id*.

In this case, nothing said to Young by the Trial Court was untrue or coercive. The court merely explained to Young the difference between his sentencing exposure with a trial or with the offered plea agreement. This is information the Court was required to explain to Young and was not coercive under the law. Therefore, there was no basis for counsel to object.

In addition, the record also discloses nothing that would indicate that counsel in anyway coerced Young into accepting the plea. After assessing the heinous injuries he caused, and after considering the potential 50 to 60 years he would spend in prison, Young indicated his desire to accept the plea bargain. In light of the foregoing, counsel's encouragement or advice for Young to accept the plea agreement as offered was certainly not outside the scope of reasonable performance.

Young also suggests that the Trial Court should not have participated in his decision to accept or reject the plea offer, or presumably that his counsel should not have allowed it. The State argues that Young's reliance on federal procedural law is misplaced since state law does not prohibit the Trial Court from addressing the plea agreement. The Court first notes that the Trial Court did not involve itself in the plea agreement.

As outlined above, the Trial Court conducted a proper and legally appropriate colloquy with Young to provide the necessary information for Young to reach his decision between trial and plea. Young has failed to state a cognizable federal issue arising from the Trial Court's explanation of his

choices, or in counsel's failure to stop the Trial Court from doing that which it was required to do during the plea colloquy.

Furthermore, in light of the colloquy between the Trial Court and Young, there is no indication that, but for counsel's role and advice, Young would not have entered the plea. The record reflects that Young understood quite well that he would be spending 50 to 60 years in jail if a jury found him guilty, and he chose to avoid that possibility by accepting the plea agreement with a 15 year sentence exposure. Young has not established that his counsel's performance fell below the standards set forth in *Strickland*.

### B.      Mitigating Sentencing Factors (Claim No. 2)

Young alleges that his counsel was ineffective for allowing the Trial Court to sentence him without considering certain mitigating factors which could have reduced the sentence imposed. Young entered a plea which included an agreed upon sentence of 15 years, a fact he readily recognized and repeated at the plea hearing.

In this case, there was no sentencing hearing to determine an appropriate sentence. The Trial Court instead sentenced Young to 15 years in concurrent sentences in accordance with the terms of the plea agreement. An attorney cannot be ineffective for failing to present mitigating evidence at a sentencing hearing that was never held. *Davis v. Quarterman*, No. 3:08-CV-2145-L, 2009 WL 1058059, at *4 (N.D. Tex. Apr. 17, 2009) (Order adopting Findings and Recommendation).

Furthermore, as noted above, Young's exposure after trial was between 50 and 60 years for both counts charged. The 15 year concurrent sentences offered by the State was significantly below that exposure. In addition, Young does not indicate what, if any, mitigating factors could have been considered by the Court, or presented by his counsel, that would have decreased this lenient sentence

choices, or in counsel's failure to stop the Trial Court from doing that which it was required to do during the plea colloquy.

Furthermore, in light of the colloquy between the Trial Court and Young, there is no indication that, but for counsel's role and advice, Young would not have entered the plea. The record reflects that Young understood quite well that he would be spending 50 to 60 years in jail if a jury found him guilty, and he chose to avoid that possibility by accepting the plea agreement with a 15 year sentence exposure. Young has not established that his counsel's performance fell below the standards set forth in *Strickland*.

### B.      Mitigating Sentencing Factors (Claim No. 2)

Young alleges that his counsel was ineffective for allowing the Trial Court to sentence him without considering certain mitigating factors which could have reduced the sentence imposed. Young entered a plea which included an agreed upon sentence of 15 years, a fact he readily recognized and repeated at the plea hearing.

In this case, there was no sentencing hearing to determine an appropriate sentence. The Trial Court instead sentenced Young to 15 years in concurrent sentences in accordance with the terms of the plea agreement. An attorney cannot be ineffective for failing to present mitigating evidence at a sentencing hearing that was never held. *Davis v. Quarterman*, No. 3:08-CV-2145-L, 2009 WL 1058059, at *4 (N.D. Tex. Apr. 17, 2009) (Order adopting Findings and Recommendation).

Furthermore, as noted above, Young's exposure after trial was between 50 and 60 years for both counts charged. The 15 year concurrent sentences offered by the State was significantly below that exposure. In addition, Young does not indicate what, if any, mitigating factors could have been considered by the Court, or presented by his counsel, that would have decreased this lenient sentence

<S>12</S>

already offered.  *Cf. Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (explaining on issue of counsel's responsibility to present mitigating evidence at sentencing, that "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant . .. [or even to] present mitigating evidence at sentencing in every case"). Young also does not allege that the sentence he received was unconstitutional or excessive in any way and anything less than that is not cognizable under the Constitution.[31]

For the foregoing reasons, Young has not established that his counsel's performance was deficient or but for counsel's performance, that he would not have entered the plea, that he would not have accepted the sentence offered, or that he would have received a lesser sentence than that imposed.  The state courts' denial of relief on this claims was not contrary to established Supreme Court case law, nor was it an unreasonable application of that precedent.  Young is not entitled to relief on this claim.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Ronnie Young's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[31]Federal habeas corpus relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law.  *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998).  The Trial Court's failure to comply with La. Code Crim. P. art. 894.1 would not implicate the Constitution.

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[32]

New Orleans, Louisiana, this 8th day of December, 2010.

*[signature]*
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[32]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.